1999 ME 122

**FRYEBURG HEALTH CARE CENTER**

v.

**DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued June 9, 1999.

Decided July 30, 1999.

Charles F. Dingman (orally), Preti, Flaherty, Beliveau, Pachios & Haley, Augusta, for the plaintiff.

Andrew Ketterer, Attorney General, Jane B. Gregory, Asst. Atty. Gen. (orally), Marci Alexander, Asst. Atty. Gen., Augusta, for the defendant.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] The Department of Human Services appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) in favor of Fryeburg Health Care Center. The court vacated a decision by the Commissioner of Human Services affirming the Department's decision not to reimburse Fryeburg for nursing facility services it provided to four patients whose medical eligibility reassessments it failed to have conducted by specific reclassification dates. The court found that the Department's decision was not supported by the applicable Medicaid regulations. Because we agree with the Department that its interpretation of the Medicaid regulations is reasonable, we vacate the Superior Court's judgment.

[¶ 2] Medicaid is a program jointly funded by the state and federal governments in accordance with Title XIX of the Social Security Act, 42 U.S.C.A. ch. 7, subch. XIX (§§ 1396–99) (1992 & Pamph.1999). The Department administers the program in Maine pursuant to 22 M.R.S.A. §§ 10 and 12, and ch. 855 (§§ 3172–91) (1992 & Supp. 1998). The Department pays for the medical care of eligible recipients by reimburs-

ing Medicaid "providers" for their expenses. *See* 42 U.S.C.A. § 1396a(13)(A) (1992 & Pamph.1999); 42 C.F.R. § 447.250 (1998); 22 M.R.S.A. § 1708(3) (1992 & Supp.1998). The Maine regulations for the Medicaid program are contained in the Maine Medical Assistance Manual.

[¶ 3] Fryeburg is a contractual provider of both nursing facility and assisted living residential care facility services to Medicaid eligible patients. This case arose out of the Department's decision not to reimburse Fryeburg for expenses totalling $36,883.55 that Fryeburg incurred providing nursing facility services to four patients between March and September of 1996. Although it should have had medical eligibility reassessments for these patients performed, respectively, by March 11, May 15, July 7, and August 8, it did not request the reassessments until September 12, 1996. Once it submitted the requests, Senior Spectrum, the independent assessment agency designated by the Department, conducted the reassessments and determined that while three of the four patients remained medically eligible to receive the full nursing facility services they were receiving, one of the patients was eligible only for a reduced level of nursing care.

[¶ 4] The Department refused to reimburse Fryeburg for the services it provided to these patients between the dates on which their reassessments should have been performed and the dates on which their reassessments were actually performed. It interpreted Medicaid laws and regulations to provide that a reclassification date acted as an eligibility termination date. Thus, because the eligibility of patients would lapse until they were reassessed, nursing facilities would not be entitled to reimbursement for providing services to those patients who were not reassessed on time. Consequently, it concluded that Fryeburg was not entitled to reimbursement because it had provided services to ineligible patients.

[¶ 5] Fryeburg challenged the disallowance through administrative review procedures that culminated in an adjudicatory hearing before a Department hearing officer. *See* Maine Medical Assistance Manual, ch. I, § 1.19. Concluding that the Department's construction was consistent with the language of the regulations, the hearing officer recommended that the Commissioner of Human Services affirm the Department's determination that Fryeburg was not entitled to reimbursement. The Commissioner adopted the hearing officer's findings and decision as the final decision.

[¶ 6] Fryeburg filed an appeal pursuant to M.R. Civ. P. 80C and 5 M.R.S.A. §§ 11001 and 11004 (1989). In vacating the Commissioner's decision, the Superior Court held that the Commissioner made an error of law in denying reimbursement because nothing in the applicable Medicaid regulations explicitly provided that reclassification dates were eligibility termination dates or that the Department could refuse to reimburse a provider that failed to have its patients reassessed by those dates. The Department then filed this appeal.

[¶ 7] On an appeal from an intermediate appellate review of an administrative decision, we directly review an agency's decision for an abuse of discretion, error of law, or findings not supported by the evidence. *See* 5 M.R.S.A. § 11007(4)(C) (1989); *Hale–Rice v. State Retirement System*, 1997 ME 64, ¶ 8, 691 A.2d 1232, 1235 (1997). We give considerable deference to an agency's interpretation of its own internal rules, regulations, and procedures and will not set it aside, unless the rule or regulation plainly compels a contrary result. *See Hale–Rice*, 1997 ME 64, ¶ 12, 691 A.2d at 1236; *AFSCME Council 93 v. Maine Labor Relations Bd.*, 678 A.2d 591, 593 (Me.1996); *Sebasticook Valley Health Care Facility, Inc. v. State*, 484 A.2d 595, 602 (Me.1984). The challenger has the burden of showing that the Department's action is arbitrary or based on an error of law. *See Medical Care Management, Inc. v. Department of Human Services*, 632 A.2d 436, 436–37

(Me.1993); *Sebasticook Valley Health Care Facility*, 484 A.2d at 602.

■ [¶ 8] Fryeburg argues that the Department made an error of law in disallowing reimbursement because it had not promulgated a formal rule pursuant to the rule making provisions of the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 8052–54 (1989 & Pamph.1998), explicitly explaining the consequences of failing to have timely reassessments conducted. According to Fryeburg, the Department was not authorized to deny reimbursement until it formally amended section 67.05–4(B) of chapter II of the Manual in March of 1997, to provide that a nursing facility must request eligibility reassessments "at least five calendar days prior to the end date of the resident's current approved classification period in order for a new classification period to be established and Medicaid coverage to continue."

■ [¶ 9] Contrary to Fryeburg's contention however, an agency is not required to use the formal rule making procedures every time it makes a decision interpreting an existing rule. *See Mitchell v. Maine Harness Racing Comm'n*, 662 A.2d 924, 927 (Me.1995). Here, Fryeburg concedes that the regulations contained in the Manual are rules that the Department promulgated in accordance with the formal rule making procedures. The Department did not create a new rule in rejecting Fryeburg's request for reimbursement. Rather, it interpreted the existing rules governing the Medicaid program. The Department was not required to amend the regulations before it could refuse to reimburse Fryeburg, and the subsequent amendment to section 67.05–4(B) merely reflects the Department's decision to memorialize its interpretation of the rules.

■ [¶ 10] In determining not to reimburse Fryeburg, the Department relied on state regulations contained in the Manual and on federal regulations. Section 1.04 of chapter I of the Manual permits the Department to reimburse a Medicaid provider only for "Medicaid covered services provided to individuals who are eligible for services provided on the date the services are actually provided, or who have been granted retroactive Medicaid eligibility after services have been provided." A nursing facility like Fryeburg must obtain a prior authorization before extending nursing facility services to a patient. Section 1.15–1 of chapter I of the Manual provides:

When a participating provider furnishes a service or equipment and has ... failed to request [prior authorization] ... that provider is liable for the costs of services which that provider has furnished the recipient and that provider may not bill either the Department or the recipient for such care or services except in the following situation:

Prior to the provision of the services, the recipient acknowledges in writing that he or she is aware that [prior authorization] has not been granted and, therefore, Medicaid will not pay for the services and that he or she accepts financial liability to pay for the services.

The prior authorization obligates the provider to have medical eligibility assessments of its patients performed to establish they meet general Medicaid eligibility requirements, medical requirements, and other specific requirements. *See* Maine Medical Assistance Manual, ch. I, § 1.15–1; ch. II, §§ 67.02, 67.03.

[¶ 11] In addition to these sections of the Manual, the Department based its decision on the federal regulation that requires a Medicaid recipient's eligibility to be redetermined at least every twelve months, *see* 42 C.F.R. § 435.916(a) (1998), and the Manual section that makes the nursing facility "responsible for implementing a systematic review process to monitor the service needs of each resident and to determine whether the resident continues to require a Nursing Facility level of care pursuant to the eligibility requirements set forth under Section 67.02," Maine Medical Assistance Manual, ch. II, § 67.05–3. The Department interpreted these regulations to mean that timely medical eligibility reassessments must be performed for a

patient's eligibility to continue.[1] If an assessment is not performed, a patient's eligibility lapses unless and until the reassessment occurs. Accordingly, a nursing facility is not entitled to reimbursement for providing services to a patient whose eligibility has lapsed until that patient again is found eligible.

[¶ 12] The Department's interpretation reasonably comports with the language of the regulations and is not clearly erroneous. Here, Fryeburg conceded that it had

four of its patients examined well after their reassessment dates had passed. Consequently, the Department was not obligated to reimburse Fryeburg for the nursing facility expenses.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of a judgment in favor of the defendant.

---

1. The record shows that the Department notified providers about its interpretation of the regulations. This notification included a letter issued in September of 1995, explaining the eligibility assessment process and the providers' responsibility for ensuring the timely completion of that process; regular informational mailings to administrators; and an informational packet mailed in May of 1996, containing forms, instructions, and a question and answer booklet that all emphasized the providers' obligation to request timely reassessments to ensure continual payment.