2003 ME 65

**Arthur REARDON et al.**

**v.**

**DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued: March 12, 2003.
Decided: May 5, 2003.

Jon A. Haddow (orally), Farrell, Rosenblatt & Russell, Bangor, for plaintiffs.

G. Steven Rowe, Attorney General, Renee Guignard, Asst. Attorney General (orally), Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Arthur and Jillayne Reardon appeal from a judgment of the Superior Court (Penobscot County, *Mead, J.*) affirming the denial by the Department of Human Services (DHS) of the Reardons' application for an Adult Family Care Home (AFCH) license, and the imposition of a financial penalty by DHS against the Reardons for providing assisted living services to more than two residents without a license. The Reardons assert that DHS (1) improperly rejected the application because the licensing rule it relied upon is unconstitutionally vague, and (2) erroneously found that they provided assisted living services to more than two residents. We disagree and affirm the judgment.

## I.  BACKGROUND

[¶ 2] Arthur and Jillayne Reardon operate Riverside Care Home in a five-bedroom house in Brewer. When DHS began an investigation of the home on July 26, 2000, the Reardons were providing assisted living services without a license to seven elderly residents in violation of 22 M.R.S.A. § 7801(1)(A), (3) (Supp.2002) (restricting unlicensed residential care facilities to caring for no more than two residents). Despite a DHS order to immediately cease and desist from providing

assisted living services to more than two residents, the Reardons did not come into compliance until September 25. On August 8, 2000, the Reardons applied for two types of residential care facility licenses, one of them being an AFCH[1] license. DHS denied the two applications; the hearing officer recommended affirmance of both denials; and the Commissioner accepted the hearing officer's recommendations in March 2001. The Reardons did not seek appellate review of the Commissioner's action.

[¶ 3] One month later, the Reardons submitted a new application for an AFCH license. DHS denied the application, and a hearing officer subsequently recommended affirmance, concluding that the Reardons had failed to satisfy the requirement, set forth in 10–144 CODE ME. R. ch. 121, § 4.A.6 (1996), that applicants have "a satisfactory record of honest and lawful conduct in business and personal affairs" largely because of the prior finding of fact, adopted just one month before the Reardons' license application, that the Reardons had violated DHS's licensing rules by providing assisted living services to seven residents without a license, and by continuing to do so, despite a DHS order to immediately cease and desist. The hearing officer also found that Jillayne had improperly represented on the application that she had never previously been denied a license when, in fact, she had been denied two such licenses within the previous year, and that Jillayne provided a reference from her husband when the application required references from persons unrelated to the applicants.

[¶ 4] In a separate administrative proceeding, DHS discovered the Reardons had provided "assisted living residential care services" to three adults for compensation for five days in June 2001 and fined the Reardons $2500 pursuant to 22 M.R.S.A. § 7944(1)(C) (Supp.2002). The hearing officer recommended affirmance. The Commissioner adopted the hearing officer's findings of fact and accepted her recommendations for both the penalty case and the denial case. The Reardons appealed both decisions, and the Superior Court affirmed DHS's decisions. This appeal followed.

## II. DISCUSSION

■ [¶ 5] When the Superior Court has acted in an intermediate appellate capacity for a case involving an agency's decision, "we directly review an agency's decision for an abuse of discretion, error of law, or findings not supported by the evidence[,] ... giv[ing] considerable deference to an agency's interpretation of its own internal rules, regulations, and procedures...." *Fryeburg Health Care Ctr. v. Dep't of Human Servs.*, 1999 ME 122, ¶ 7, 734 A.2d 1141, 1143 (internal citations omitted).

### A. Denial of License Application

■ [¶ 6] One of DHS's requirements for AFCH license applicants is that they have "a satisfactory record of honest and lawful conduct in business and personal affairs" (hereinafter, the satisfactory record rule). 10–144 CODE ME. R. ch. 121, § 4.A.6 (1996). The Reardons contend that the satisfactory record rule is unconstitutionally vague and, as applied, effectively bars them from ever getting a license. Their challenge is centered on the rule's failure to specify the length of time a prior adverse administrative finding by DHS may be considered when DHS deter-

---

1. An Adult Family Care Home (AFCH) is a licensed residential style home that provides services to five or fewer residents for compensation. 10–144 CODE ME. R. ch. 101, § 2.01–2 (1996).

mines, for purposes of a subsequent license application, whether an applicant has demonstrated a satisfactory record.

[¶ 7] When the language of a regulation sets forth a requirement " 'in terms so vague that people of common intelligence must guess at its meaning,' " the regulation is impermissibly vague. *Town of Baldwin v. Carter*, 2002 ME 52, ¶ 10, 794 A.2d 62, 67 (quoting *City of Portland v. Jacobsky*, 496 A.2d 646, 649 (Me.1985)). However, a rule that uses general language and does not objectively quantify, for example, the number of instances of proscribed conduct, is not unconstitutionally vague provided that it informs the public of the proscribed conduct. *Carter*, 2002 ME 52, ¶ 7 n. 2, 794 A.2d at 66. In *Maine Real Estate Commission v. Kelby*, we found that the statute proscribing " 'bad faith,' 'incompetency,' 'untrustworthiness,' and 'dishonest, improper or fraudulent dealings' " by real estate brokers and salespeople was "sufficiently definite to apprise those in the profession of the line between permissible and forbidden conduct." 360 A.2d 528, 532 (Me.1976) (quoting 32 M.R.S.A. § 4056(1)(N) (repealed 1987)).

[¶ 8] Contrary to the Reardons' contention, the absence in the satisfactory record rule of a specified amount of time an applicant must be free of violations does not render the rule unduly vague. People of common intelligence could agree that the Reardons' serious violation of the licensing statute in 2000 demonstrates that they lacked "a satisfactory record of honest and lawful conduct in business and personal affairs" as of the date of their application in April 2001. The satisfactory record rule is sufficiently definite to apprise those people who seek and hold AFCH licenses that licensure is dependent upon the conduct of their business affairs in an honest and lawful manner.[2]

[¶ 9] Title 22, section 7802(4)(B) (1992),[3] permits an unsuccessful license applicant to submit subsequent applications after correcting the deficiencies identified by DHS. The amount of time an applicant must be free of violations before he or she can transform an unsatisfactory record into a satisfactory record is necessarily case specific, because the amount of time must be assessed in conjunction with a variety of factors such as the nature and severity of a prior violation, the steps taken by the applicant to discontinue the violation and mitigate its effects, and the applicant's post-violation performance record. Because a violation considered in a prior application does not permanently bar an applicant from receiving an AFCH license in the future, it is reasonable for DHS to consider that violation along with all other relevant information when acting upon a subsequent license application. As reflected in the record of this proceeding, the age of the violation was one of several factors that influenced the weight the violation was afforded in the licensing decision. This approach is rooted in common sense and, contrary to the Reardons'

2. Because DHS did not determine that the Reardons lack a satisfactory record of honest and lawful conduct in their "personal affairs," we do not examine the constitutionality of that aspect of the satisfactory record rule.

3. Section 7802(4)(B) provides:

> 4. **Subsequent application for a full license or approval.** Subsequent to any of the following actions, a subsequent application for a full license or approval may be considered by the department when the deficiencies identified by the department have been corrected:
>
> . . .
>
> B. Refusal to issue or renew a full license or approval . . . .

22 M.R.S.A. § 7802(4)(B) (1992).

claim, does not serve to bar them from ever obtaining a license.

■ [¶ 10] The Reardons also claim that the satisfactory record rule "is so vague that it constitutes an improper delegation of legislative authority." However, an "improper delegation of legislative authority" issue can only arise when the Legislature delegates authority to an administrative agency. *See, e.g., Ogunquit Sewer Dist. v. Town of Ogunquit,* 1997 ME 33, ¶¶ 3, 14, 691 A.2d 654, 656, 658 (involving a statute authorizing the board of selectmen to make a written determination as to whether the proposed sewer extension was consistent with the town's comprehensive plan); *Northeast Occupational Exch., Inc. v. State,* 540 A.2d 1115, 1116 (Me.1988) (questioning whether the Community Mental Health Services Act could properly authorize the Commissioner to license facilities and issue regulations). Here, the satisfactory record rule was created by DHS, not by the Legislature, and thus is not a delegation of legislative authority.

The Reardons have no reason to question whether DHS has the authority to promulgate rules to govern the administration of its programs because that authority is well established. *See* 22 M.R.S.A. § 7853(2) (Supp.2002) (authorizing DHS to adopt rules governing the "administration, quality of care and treatment, if applicable, level and qualifications of staff, ... administration of medication, ... health and safety of residents and staff, community relations and licensing procedures").

[¶ 11] Based upon the totality of the information before it, including the circumstances associated with the denial of the Reardon's first two applications, DHS did not err by denying the Reardons a license.

## B. Monetary Penalty

■ [¶ 12] DHS imposed a monetary penalty against the Reardons pursuant to 22 M.R.S.A. § 7944(1)(C)[4] based upon the finding that three residents had received "assisted living residential care services"[5]

---

4. Section 7944(1)(C) states in pertinent part:

> **1. Authorization.** The department is authorized to impose one or more of the following sanctions when a violation of this chapter occurs and the department determines that a sanction is necessary and appropriate to ensure compliance with state licensing rules or to protect the residents of long-term care facilities or the general public.
>
> . . .
>
> **C.** The department may impose a penalty upon a long-term care facility for operating without a license or for a violation of this chapter. The minimum penalty for operating without a license is $500 per day.

22 M.R.S.A. § 7944(1)(C). A "long-term care facility" is a term encompassing many different types of facilities, including facilities subject to licensure pursuant to 22 M.R.S.A. § 7801 et seq., which includes residential care facilities providing care to more than two residents. An "Adult Family Care Home," or AFCH, is a specific type of residential care facility providing services for

compensation to five or fewer residents. 10–144 CODE ME. R. ch. 101, § 2.01–2.

5. "Assisted living residential care services" is not found in either the Code of Maine Rules or the Maine Revised Statutes Annotated. We assume that it is a consolidation of "residential services" and "assisted living services," two terms with similar definitions.

"Residential services" is defined in the regulations governing the licensing of Adult Family Care Homes as "services that support individual skills and abilities and enhance the highest practicable well-being, resulting in self-determination and decision making that enhances independence, individuality, and dignity." 10–144 CODE ME. R. ch. 121, § 1 (1996). The rule contains seven subdivisions describing different aspects of the services: personal supervision, protection from environmental hazards, assistance with activities of daily living, medication administration, diversional or recreational activities, dietary services, and nursing services. *Id.*

The subdivisions found in the definition of "residential services" are similar in scope to

 

for compensation at Riverside Care Home from June 22 until June 26, 2001. The Reardons contend that the third adult staying at Riverside Care Home between June 22 and 26, 2001 should not be counted as a resident because she was there only on a temporary basis and slept in a nearby recreational vehicle at night instead of the home. DHS responds that the third adult was suffering from advanced dementia and required twenty-four hour care; she spent a good portion of each day receiving assisted living services in the facility, and thus was properly deemed a "resident" of the facility regardless of whether she may have slept in the recreational vehicle.

[¶ 13] A resident is defined as "any person 18 years of age or older, who is not the spouse of the owner or resident manager, who is receiving, in addition to room and board, residential care services[6] for compensation in an AFCH." 10–144 CODE ME. R. ch. 101, § 2.01–9 (1996). This rule does not require a minimum number of days or minimum amount of residential care services, room, and board that a person must receive at a residential care facility before becoming a "resident." The fact that the Reardons may have had the elderly woman sleep at night in a recreational vehicle in their driveway does not ameliorate the fact that she was receiving residential services at the facility. Thus, DHS neither made an error of law nor abused its discretion in imposing a penalty of $500 per day for five days upon the Reardons for operating an unlicensed residential care facility during June 2001.

The entry is:

Judgment affirmed.

---

the categories provided in the statutory definition for "assisted living services." 22 M.R.S.A. § 7852(3), (5) (Supp.2002) (including personal supervision, protection from environmental hazards, assistance with activities of daily living and instrumental activities of daily living, medication administration, care management and diversional or motiva- tional activities, provision of meals and diet care, and nursing services).

6. While "residential care services" is used frequently in the Maine Department of Human Services Regulations, no definition is provided. See footnote 5 for the definition of "residential services."