2006 ME 63

**Audrey BROWN et al.**

v.

**DEPARTMENT OF HEALTH AND
HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Submitted On Briefs: March 22, 2006.

Decided: June 2, 2006.

Jefferson T. Ashby, Esq., Pine Tree Legal Assistance, Inc., Presque Isle, for plaintiffs.

G. Steven Rowe, Attorney General, Janine Keck Massey, Asst. Atty. Gen., Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] Audrey and Earl Brown appeal from a judgment of the Superior Court (Aroostook County, *Hunter, J.*), which affirmed a decision of the Commissioner of the Department of Health and Human Services concluding that the Browns are not eligible to participate in the Meals on Wheels program administered by the Aroostook Agency on Aging. We conclude that the Commissioner erred in failing to consider the Browns' financial circumstances when evaluating their eligibility, and that the evidence does not support the Commissioner's conclusion that the Browns do not lack support to have meals prepared for them as required by the Department's rules. Accordingly, we vacate the judgment.

## I. BACKGROUND

[¶ 2] Audrey Brown, age seventy-nine, and her husband, Earl Brown, age eighty-one, were participants in the Meals on Wheels lunch program in Aroostook County. After the Browns relocated to Leisure Village in Presque Isle, the Department's agent, the Aroostook Agency on Aging, determined that the Browns were no longer eligible for the program because of the availability of a private lunch delivery program offered at Leisure Village. The Browns appealed this decision, and a hearing was conducted before a Department hearing officer. The following facts, taken largely from the hearing officer's recommended decision, are not in dispute.

[¶ 3] The Browns pay $1000 per month in rent at Leisure Village, a fee that covers only housing. For an additional fee of $11 per day (or approximately $330 per month), the Browns can purchase lunches that are picked up at a local restaurant by Leisure Village staff and delivered to Leisure Village residents. The Browns are unable to prepare their own meals, and their morning and evening meals are provided by a home care service that is unrelated to the nutrition program that is the subject of this appeal. As testified to by its executive director, the Aroostook Agency on Aging concluded that the Browns met three of the four criteria required to qualify for the Meals on Wheels program then in effect. *See* 18 C.M.R. 10 149 005–69 § 65.04(A)(1)(c) (2003).[1] The four eligibility criteria were that the person must (1) be in one of seven prioritized groups, one of which included those sixty or older in greatest economic or social need; (2) be homebound or isolated; (3) be unable to prepare their own meals or lack support to have them prepared; and (4) sign a meals assessment indicating that the information

---

1. The regulations were revised in 2004 subsequent to the Aroostook Agency on Aging's decision, but prior to the Commissioner's final decision. 10–149 Chapter 5, Bureau of Elder and Adult Services Policy Manual § 65.05(A)(1)(c) (2004). The language of the third criterion—that applicants must "be unable to prepare their own meals or lack support to have meals prepared for them"—is identical in the 2003 and 2004 versions of the rules. The other three requirements in the 2003 version are also found in the 2004 version. *See* 18 C.M.R. 10 149 005–69 § 65.04(A)(1) (1997); 10–149 Chapter 5, Bureau of Elder and Adult Services Policy Manual § 65.05(A)(1) (2004). The 2004 version of the regulations can be found at http://www.maine.gov/sos/cec/rules/10/chaps10.htm.

provided is true and that they wish to receive home-delivered meals. 18 C.M.R. 10 149 005–69 § 65.04(A)(1), (2)(b). The Browns were found not to satisfy the third criterion because although they were determined to be unable to prepare their own meals, they did not lack support to have them prepared due to the availability of the Leisure Village lunch delivery service.

[¶ 4] The Browns sought an administrative review of the Aroostook Agency on Aging's decision by the Department. The Department's hearing officer rejected the position of the Department that the Browns did not lack support to have meals prepared for them as a result of Leisure Village's delivery service. The hearing officer concluded that the availability of the lunch delivery service at Leisure Village did not mean that the Browns have "support" to have meals prepared for them. He distinguished the delivery service from other residential arrangements, such as nursing homes, where "the cost of the meals [is] included as part of the monthly rent."

[¶ 5] The hearing officer's recommended decision was considered by the Commissioner, who then remanded the case to the hearing officer to consider whether the daily fee for the noon meal provided through the Leisure Village delivery service would work an economic hardship on the Browns. The hearing officer issued additional findings and concluded that the cost of the meal "would clearly be an economic hardship to the Browns."

[¶ 6] The Commissioner's final decision adopted the hearing officer's findings of fact, but rejected his legal analysis. Instead, the Commissioner agreed with the Bureau of Elder and Adult Services's interpretation of the term "support" as set forth in a letter cited in the Commissioner's decision. The letter stated that the Browns did not lack support because Leisure Village offered meals on a fee-for-service basis, and that "support" cannot be interpreted to permit any consideration of the Browns' financial circumstances because means tests are prohibited by the federal regulations that implement the Older Americans Act, 42 U.S.C.A. §§ 3001–3058ee (West 2003 & Supp.2005). *See* 45 C.F.R. §§ 1321.17(f)(3), 1321.67(c) (2005). The Commissioner concluded that the Browns were ineligible because they do not lack support to have meals prepared for them at Leisure Village.

[¶ 7] The Commissioner's decision was subsequently affirmed by the Superior Court on the Browns' appeal brought pursuant to M.R. Civ. P. 80(C). The court concluded that the Department's interpretation of the term "support" in its regulations to include fee-for-service meals, such as those available at Leisure Village, was reasonable.

## II. DISCUSSION

[¶ 8] We consider, in turn, (A) the Department's contention that the issue presented by this appeal has become moot because of an additional eligibility criterion that became effective shortly before the Commissioner's final decision; and (B) the Browns' contention that the Commissioner erred in construing "support," as used in the Department's regulation governing eligibility, to exclude consideration of an applicant's financial support.

A. Mootness

[¶ 9] The Department asserts that this appeal is rendered moot because of the Department's adoption of a fifth eligibility criterion in 2004 that requires that a person must also "not be residing in assisted housing where meals are available." 10–149 Chapter 5, Bureau of Elder and Adult Services Policy Manual

§ 65.05(A)(1)(d) (2004). Consequently, the Department contends that the issue of whether the Browns lack support to have meals prepared for them is moot because even if we conclude that the Commissioner erred in this regard, the Browns remain ineligible for home-delivered nutrition services because they are "residing in assisted housing where meals are available," *id.*, and this negates any practical effects that would arise from the resolution of this appeal. We disagree.

[¶ 10] Our review is restricted to the record and the regulatory criteria relied on by the Commissioner at the time of his decision. The fifth criterion was in effect at the time of the Commissioner's decision and could have been relied on by the Commissioner to support the denial of services to the Browns. *See Brooking v. Me. Employment Sec. Comm'n,* 449 A.2d 1116, 1120 (Me.1982) (refusing to remand for consideration an issue raised before commission where commission did not decide the issue). The fifth criterion does not render this appeal moot because it was not a basis for the agency decision under review.[2] Moreover, the issue is not preserved for our review because it was not a basis for the Commissioner's decision and it was not raised by the Department before the Superior Court. *See MP Assocs. v. Liberty,* 2001 ME 22, ¶ 18, 771 A.2d 1040, 1046. Consequently, our determination of whether the Browns satisfy the requirement that was the basis for the agency action under review—that they lack support to have their meals prepared—remains a live issue.

B. The Meaning of "Support" in the Department's Regulation

[¶ 11] The Browns essentially argue that the Commissioner's construction of "support," as used in section 65.05(A)(1)(c), to exclude consideration of an applicant's financial circumstances is both unreasonable and inconsistent with the hearing officer's finding that they lack support to have their meals prepared because they cannot afford to pay for take-out lunches. They contend that the Commissioner committed legal error when he concluded that any consideration of their economic circumstances to determine their eligibility would constitute a means test that is prohibited by the federal regulations:

[¶ 12] The Department contends that the Commissioner's construction of the term "support" is reasonable because although the federal regulations encourage the Department to consider financial need to prioritize the distribution of benefits, the regulations prohibit the Department from considering an applicant's financial need to determine the applicant's eligibility for services. Under this view, the Browns do not lack support to have meals prepared for them because they have a way to arrange for Leisure Village staff to deliver their noon meals, regardless of whether they are with or without the means to pay for the meals.

[¶ 13] When the Superior Court serves as an intermediate appellate court, we review directly the Commissioner's decision "for errors of law, unsustainable exercises of discretion, or findings not supported by substantial evidence in the record." *Uliano v. Bd. of Envtl. Prot.,* 2005 ME 88, ¶ 6, 876 A.2d 16, 18. We afford " 'considerable deference to an agency's interpretation of its own internal rules, regulations, and procedures.' "

---

**2.** We therefore do not decide whether, as the Department contends, the record establishes that the Browns are "residing in assisted housing where meals are available." 10–149 Chapter 5, Bureau of Elder and Adult Services Policy Manual § 65.05(A)(1)(d) (2004).

*Reardon v. Dep't of Human Servs.*, 2003 ME 65, ¶ 5, 822 A.2d 1120, 1122 (quoting *Fryeburg Health Care Ctr. v. Dep't of Human Servs.*, 1999 ME 122, ¶ 7, 734 A.2d 1141, 1143).

[¶ 14] The Older Americans Act advances two policy objectives that appear, at first blush, to contradict one another. The Act declares "that, in keeping with the traditional American concept of the inherent dignity of the individual in our democratic society, the older people of our Nation are entitled to . . . [t]he best possible physical and mental health which science can make available and *without regard to economic status.*" 42 U.S.C.A. § 3001(2) (West 2003) (emphasis added). In addition to this declaration to provide services without regard to economic status, the Act requires that the State agency in charge of administering the State plan,[3] must "provide assurances that preference will be given to providing services *to older individuals with greatest economic need* and older individuals with greatest social need, *with particular attention to low-income minority individuals and older individuals residing in rural areas.*" 42 U.S.C.A. § 3025(a)(2)(E) (West 2003) (emphasis added). Thus, the Act anticipates that States will make nutritional services available to older individuals without regard to their economic status, but it also directs the States to make it a priority to deliver those services to, among others, older individuals with the greatest economic need.[4]

[¶ 15] The federal regulations that implement the Act explicitly restrict the use of a means test in providing services. Specifically, a State plan must give preference to "older persons in greatest social or economic need in the provision of services" but "ensure that all services . . . are provided without use of any means tests." 45 C.F.R. § 1321.17(f)(2), (3) (2005).[5] The federal regulations also provide that "means tests may not be used for any service supported with funds under this part." 45 C.F.R. § 1321.67(c) (2005). A "means test" is defined as "the use of an older person's income or resource to *deny* or *limit* that person's receipt of services under this part." 45 C.F.R. § 1321.3 (2005) (emphasis added). The letter relied on by the Commissioner cited and discussed the two federal rules that prohibit the use of any means tests, but made no mention of the definition of "means test" contained within the rules.

---

3. A State plan must be filed for a State to be eligible to receive federal grants. 42 U.S.C.A. § 3027(a) (West 2003).

4. "Greatest economic need" is defined as "the need resulting from an income level at or below the poverty line." 42 U.S.C.A. § 3002(27) (West 2003). "Greatest social need" is defined as:

the need caused by noneconomic factors, which include—
(A) physical and mental disabilities;
(B) language barriers; and
(C) cultural, social, or geographical isolation, including isolation caused by racial or ethnic status, that—
(i) restricts the ability of an individual to perform normal daily tasks; or
(ii) threatens the capacity of the individual to live independently.

42 U.S.C.A. § 3002(28) (West 2003).

5. The Maine regulations also recognize that economic need is a relevant factor for establishing priorities in the delivery of services:

Maine's nutrition program assists older people to remain healthy and active in their communities and to avoid premature or inappropriate institutionalization. The program provides meals which contain at least one-third of the Recommended Dietary Allowances (RDA), social contact and access to other services. Priority for community and home delivered nutrition services is given to people age 60 and older with the greatest social and economic need.

10–149 Chapter 5, Bureau of Elder and Adult Services Policy Manual § 65.01 (2004).

[¶ 16] Read together, the federal regulations establish what is in essence a partial restriction on means tests that has been calibrated to achieve two goals of the Older Americans Act: to ensure that individuals in need of nutritional services due to non-economic social reasons are not prevented from receiving services by a means test, and to ensure that State plans identify and give preference to those older persons in need of nutritional services for economic reasons.[6] Thus, the limitation on means tests does not prevent the Department from determining that elderly persons such as the Browns, who may have a way to arrange for the private delivery of lunches but are without the means to pay for the lunches once they are delivered, are persons who lack "support" to have their meals prepared. Construing "support" as permitting the Department to consider the financial aspects of a person's available "support" does not impose a means test in violation of the federal regulations as long as the information is not used by the Department "to deny or limit that person's receipt of services." 45 C.F.R. § 1321.3 (2005).

[¶ 17] Accordingly, the Commissioner erred as a matter of law when he concluded that "support" must be construed to prohibit the Department from considering that the Browns are without the financial means to make use of the private lunch delivery service at Leisure Village because his conclusion was based on a misapprehension of the federal restriction on means tests. The undisputed facts establish that the Browns satisfy the sole eligibility criterion they were deemed by the Commissioner to have failed. Because the Browns lack the ability to pay for the private

home-delivery service offered at Leisure Village, they lack support to have their meals prepared and should not have been denied benefits.

The entry is:

Judgment vacated. Remanded to the Superior Court to be remanded to the Commissioner for entry of a determination that the Browns are eligible to receive home-based nutrition services.

---

6. *See* H.R. REP. No. 92–726 (1971), *reprinted in* 1972 U.S.C.C.A.N.2086, 2093 (providing that "States, in awarding grants for nutrition projects, must give preference to those serving primarily low income individuals"); H.R.

CONF. REP. No. 95–1618, at 68 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3429, 3444 (recognizing that many elderly individuals may have a social, not economic, need).