STATE OF MAINE                          SUPERIOR COURT
AROOSTOOK, ss.                          CIVIL ACTION
                                        DOCKET NO. HOUSC-AP-19-01

HOULTON REGIONAL HOSPITAL        )
                                 )
          Petitioner             )
                                 )
v.                               )      DECISION AND ORDER
                                 )
JEANNE LAMBREW, COMMISSIONER, )
MAINE DEPARTMENT OF HUMAN        )
SERVICES,                        )
                                 )
                                 )
          And                    )
                                 )
MAINE DEPARMENT of HEALTH        )
AND HUMAN SERVICES               )
                                 )
          Respondent             )

Pending before the Court is Houlton Regional Hospital's (the "Petitioner", and also referred to as "HRH") appeal from the Final Decision issued on February 7, 2019 by the Commissioner of the Maine Department of Human Services (the "Department"). More specifically, HRH appeals the Commissioner's acceptance *in toto* the Hearing Officer's Administrative Hearing Recommended Decision ("AHRD") and findings that (i) the Department was permitted to rely upon the Centers for Medicare and Medicaid Services' ("CMS") Medicare unit to determine whether HRH qualified for Electronic Health Record ("ERH") incentive payments under the MaineCare HIT Incentive Payment Program; (ii) that HRH is not entitled under the *MaineCare Benefits Manual* ("MBM") to an independent review by the Department as to whether HRH complied with the specific MaineCare EHR/HIT Incentive Payment Program requirements that were subject to CMS's audit; and (iii) that the Department correctly established a recoupment claim in the amount of $344,644 against HRH based on the audit finding by CMS

1

that HRH did not meet the Medicare HRH Incentive Program's requirements for the Program Year 2013. In this appeal HRH requests the court order the Department to conduct its own independent review of CMS's audit based on its assertion that such an independent review is required under the applicable regulations and the *MaineCare Benefits Manual (MBM)*. The Department asserts that the Department was entitled to rely upon the determination by CMS of HRH's failure to comply with Meaningful Use Requirements, and that HRH, having appealed the issue through CMS, is collaterally estopped from re-litigating the issue. The Department asks the Commissioner's Final Decision be affirmed.

Oral argument was held telephonically on August 28, 2019. Based upon the filings and arguments, the court makes the following findings and decision.

## STATEMENT OF FACTS[1]

1.  HRH is an enrolled Medicare provider and participated as an "eligible hospital" in the Medicare Electronic Health Record ("EHR") Technology Incentive Program (the "CMS EHR Program") administered by the Centers for Medicare and Medicaid Services ("CMS"), for Program Year 2013, i.e., for the attestation period March 15, 2013 through June 15, 2013 (the "2013 Attestation Period").

2.  HRH is an enrolled MaineCare provider (*see* **Exhibit J-2**) and also participated as an "eligible hospital" in the State Medicaid Health Information Technology Program administered by the Department (the "MaineCare HIT Program") in accordance with administrative rules set forth in the MaineCare Benefits Manual at 10-144 C.M.R. Chapter 101, Chapter I, Section 2, for Program Year 2013.

3.  In connection with HRH's participation in the CMS EHR Program and MaineCare HIT Program, HRH attested that it had adopted certified EHR technology ("CEHRT") that met all applicable regulatory requirements for such CERHT for Program Year 2013.

---

[1] This Statement of Facts is from the Statement of Agreed-Upon Material Facts submitted by the parties in the appeal by HRH of the Department's Final Informal Review Decision dated January 22, 2018. See HO-6 in Vol. 1 of the Certified Record; references to Exhibits has been edited to correlate with Joint Exhibits, which are in Vol. 2 of the Certified Record.

4. The Department developed a final "State Medicaid Health Information Technology Plan," dated May 12, 2011 (the "2011 SMHP") (**Exhibit J-3**), conditionally approved by CMS on April 28, 2011 (**Exhibit J-4**) and finally approved on June 23, 2011 (**Exhibit J-5**).

5. The Department's 2011 SMHP was subsequently revised by the Department in December 2015, Final v. 2.0 (the "2015 SMHP").

6. The Department promulgated administrative rules (the "MaineCare HIT Program Rules") under the Maine Administrative Procedures Act (the "APA") to implement the MaineCare HIT Program that became effective October 4, 2011, which rules were incorporated into the MaineCare Benefits Manual at 10-144 C.M.R. Chapter 101, Section 2, "State Medicaid Health Information Technology Program" (the "October 2011 MaineCare HIT Program Rules"). *See* **Exhibit J-6**.

7. The October 2011 MaineCare HIT Program Rules were subsequently amended by the Department pursuant to rule-making under the APA in November 2014, and these amended Rules became effective on November 23, 2014.

8. The October 2011 HIT Program Rules were the rules in effect for HRH's Program Year 2013 and 2013 Attestation Period.

9. The version of 10-144 C.M.R. Chapter 101, Chapter I, Section 1, of the MaineCare Benefits Manual that was in effect at the beginning of HRH Program Year 2013 and 2013 Attestation Period is identified in the record as **Exhibit J-7**, which also reflects amended rules that were incorporated under the APA on June 24, 2013.

10. HRH received a total of $307,168.84 in incentive payments from CMS for HRH's participation in the CMS EHR Program in Program Year 2013.

11. HRH received a total of $344,644 in incentive payments for HRH's participation in the MaineCare HIT Program in Program Year 2013. The incentive payments were transmitted by the Department but were comprised of 100% federal funds.

12. In or around August 2014, CMS's auditor, Figliozzi & Company ("CMS's Auditor"), conducted an audit (the "CMS Audit") of HRH to determine "how HOULTON REGIONAL HOSPITAL demonstrated meaningful use of certified Electronic Health Record (EHR) technology in accordance with Section 13411 of the Health Information Technology for Economic and Clinical Health Act (HITECH Act)" for Program Year 2013.

13. On August 18, 2014, CMS's Auditor issued to HRH a "HITECH EHR Meaningful Use Audit Determination Letter" in which the Auditor determined that HRH did not meet the meaningful use criteria for Program Year 2013 based on the Auditor's finding that HRH "[f]ailed to demonstrate access to a CEHRT system." *See* **Exhibit J-8**.

14. On August 29, 2014, HRH requested that CMS's Auditor specify what, in the Auditor's determination, HRH's EHR system lacked or was missing that prevented HRH from demonstrating access to a CEHRT system. *See* **Exhibit J-9**.

15. On the same date, August 29, 2014, CMS's Auditor responded to HRH by stating that "[a]dditional documentation was supplied [by HRH] confirming that the interfaces for Menu Measures #8, #9, and #10 were not in place at any point during the attestation period." *See* **Exhibit J-10**.

16. On September 16, 2014, HRH submitted to CMS (i) additional documentation in support of HRH's position that it had demonstrated access to a CEHRT system, and (ii) an "Eligible Hospital Appeal Filing Request" appealing the CMS Auditor's HITECH EHR Meaningful Use Audit Determination Letter decision. *See* **Exhibit J-11**.

17. In a letter from CMS to HRH dated September 26, 2014, CMS denied HRH's Appeal, a decision that was "final and not subject to further appeal." *See* **Exhibit J-12**.

18. On March 31, 2016, the Department issued to HRH a Recoupment Notice letter notifying HRH of the Department's intent, based on the audit findings of the CMS Auditor, to recoup the $344,644 in incentive payments the Department had paid to HRH for HRH's participation in the MaineCare HIT Program for Program Year 2013. *See* **Exhibit J-13**.

19. On May 27, 2016, HRH submitted to the Department a Request for Informal Review of the Department's EHR Incentive Payment Recoupment Decision (*see* **Exhibit J-14**), after being encouraged by the Department to do so on April 26, 2016.

20. On January 22, 2018, the Department issued a Final Informal Review Decision to HRH, finding that the "Department was correct in issuing a recoupment notice for Medicaid incentive payments made to Houlton Regional Hospital for the 2013 program year." *See* **Exhibit J-1**.

21. On March 21, 2018, HRH, through its counsel, requested an administrative hearing on the Department's Final Informal Review Decision. *See* **Exhibit J-15**.

22. On April 4, 2018, the Department's Chief Administrative Hearing Officer, James D. Bivins, Esq., invited HRH and the Department to submit arguments on the issue of whether HRH has a right to an appeal of the findings made by the CMS Auditor and relied upon by the Department to issue its Final Informal Review Decision, and whether HRH has a right to a hearing on that issue with the Department. *See* **Exhibit J-16**.

23. On April 20, 2018, HRH submitted to Mr. Bivins a "Request for Administrative Hearing" that included a brief of its arguments in response to Mr. Bivins' invitation. *See* **Exhibit J-17**.

24. On April 23, 2018, the Department submitted to Mr. Bivins the "Department's Position on Houlton Regional Hospital's Right to an Administrative Hearing." *See* **Exhibit J-18**.

25. On May 2, 2018, per Mr. Bivins' invitation, HRH submitted to Mr. Bivins "Houlton Regional Hospital's Reply to the Department's Position on Right to Administrative Hearing." *See* **Exhibit J-19**.

26. On May 2, 2018, the Department submitted to Mr. Bivins the "Department's Reply to Houlton Regional Hospital's Arguments."

27. On May 17, 2018, Mr. Bivins' granted HRH's request for a hearing on the Department's Final Informal Review Decision, but limited the hearing to the first two issues identified in the Department's Final Review Decision, namely:

    (i)    Whether the Department was permitted to rely upon the Centers for Medicare and Medicaid Services' ("CMS") Medicare audit to determine whether HRH qualified for EHR incentive payments under [the] Maine Medicaid Incentive Program; and

    (ii)   Whether HRH is entitled under the MaineCare Benefits Manual to an independent review by the Department as to whether HRH complied with the specific MaineCare EHR Incentive Payment Program requirements that were the subject of CMS' audit.

In addition, there are certain findings made in the Administrative Hearing Recommended Decision, which was adopted in its entirety by the Commissioner in the Final Decision, that must be included in this analysis. (See Ex. A and C of Certified Record; "CR__" being reference to page numbers of the Certified Record). Those findings include the following:

1.  *It cannot be said that the MaineCare HIT Program rules have incorporated by reference all terms and provisions published in the Maine's State Medicaid HIT Plan, where the HIT Plan has not been formally promulgated by the Department. Without adoption after an opportunity for notice and public comment, it cannot be said that the terms of the HIT Plan has the force of law enforceable by or against the Department by any party other than CMS.* Recommended Decision, p.12 (CR 884)

5

2. *The MaineCare regulations in effect for Program Year 2013 did not specify whether the Department would retain audit and appeals authority or delegate CMS to perform those functions on its behalf.* Id.

## STANDARD OF REVIEW

In an appeal of an administrative action, the Court's review is limited to whether the governmental agency's decision is (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by bias or error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S. § 11007(4)(C). The review is limited to whether the governmental agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Seider v. Board of Examiners of Psychologists,* 2000 ME 206, ¶8. The challenger has the burden of showing that the Department's action is arbitrary or based on an error of law. *Fryeburg Health Care Ctr. V. Department of Human Services,* 1999 ME 122, ¶ 7. And the court gives considerable deference to an agency's interpretation of its own internal rules, regulations, and procedures and will not set it aside, unless the rule or regulation plainly compels a contrary result. *Id.*

## DISCUSSION

The dispute in this case can be boiled down to a single question- is HRH entitled to an independent review pursuant to the MaineCare Benefits Manual (MBM), or is review of HRH's

compliance with Meaningful Use limited to review by Centers for Medicare and Medicaid Services (CMS) pursuant to the State Medicaid Health Information Technology Plan (SMHP)? The Department relies on the SMHP, which states *Dually-eligible hospitals cannot appeal MU (meaningful use), which must be done through CMS*. (CR 657) and *Dually-eligible hospital appeals of Meaningful Use are under the purview of CMS, not states*. (CR 468; see also CR 498).[2]

To receive federal grant funds, HRH voluntarily participated in the State Medicaid Health Information Technology Program (the MaineCare HIT Program"). The Department's program required federal approval. As part of the approval process the Department developed the State Medicaid Health Information Technology Plan (the "SMHP"). The SMHP is a health information technology plan developed by the Department in May, 2011, and approved finally by CMS in June, 2011. (Exhibits J-3, J-4, and J-5). From reviewing the plan, there is no doubt its objective, in part, is to set eligibility and compliance requirements for providers, such as HRH, and audit procedures, including audits of "meaningful use". But HRH was not a direct party to the SMHP. Indeed, in the Administrative Hearing Recommended Decision, the Hearing Officer wrote *"..it cannot be said the terms of the HIT plan has the force of law by or against the Department by any party other than CMS."* Recommended Decision, p. 12 (CR 884). At the same time, consistent with the SMHP, the Department did, in practice, delegate "meaningful use" oversight and audits to CMS. But that does not necessarily mean HRH is not entitled to a review of CMS's findings and appeal rights pursuant to the MBM.

---

[2] There appears to be no dispute HRH is a dually-eligible hospital.

After the Department developed the SMHP, it promulgated administrative rules (the MaineCare HIT Program Rules) under the Maine Administrative Procedures Act (the "APA") to implement the MaineCare HIT Program. Exhibit J-6. The HIT Program Rules became effective October 4, 2011, and were incorporated into the MaineCare Benefits Manual (MBM) at 10-144 C.M.R. Chapter 101, Section 2. And the HIT Program Rules specifically reference Chapter I, Section 1, §1.21-1 of the MaineCare Benefits Manual (MBM), version 10-144 C.M.R. Chapter 101.

The HIT Program rules set forth eligibility requirements, implementation and upgrade standards of electronic health records, and meaningful use requirements for incentive payments. In Section 2.02 DEFINITIONS, "Meaningful Use" is defined as- .. *the requirements that an...Eligible Hospital (EH) must meet to receive payment as required by CMS under applicable Stage 1, Stage 2, and Stage 3 rules to be issued and implemented by CMS.* Although this definition does not explicitly state CMS will conduct oversight and audits, it is clear that the meaningful use is measured by rules and standards set forth by CMS.

The HIT Program rules also provide a process for hearings and appeals. Section 2.05-2 HEARING AND APPEALS provides in pertinent part:

> A. An EH may appeal the following issues:
>
> > 3. An overpayment amount or recoupment as determined by the Department *or CMS; (emphasis added);*
> >
> > 5. Audit findings of the above.
>
> B. Appeal rights and processes are governed by the MaineCare Benefits Manual, Chapter I, Section1, §1.21-1.

It is worth repeating that the HIT Program rules were promulgated and implemented pursuant to the Administrative Procedures Act. For the 2013 year under consideration, the SMHP had not yet been duly promulgated, incorporated into the MBM, or made law.

The HIT Program Rules referenced above clearly apply to "meaningful use" standards and requirements, as required by CMS rules, as "meaningful use" is a defined term therein. See Definition of "Meaningful Use". A plain language interpretation of Section 2.05-2 HEARING AND APPEALS would lead an Eligible Hospital (EH) to believe it had appeal and hearing rights per the MaineCare Benefits Manual for *audit findings of .. an overpayment amount or recoupment as determined by ... CMS.*

Specifically, the HIT Program rules state appeal rights and processes are governed by the MaineCare Benefits Manual, Chapter 1, Section 1, § 1.21-1. Section 1.21 PROVIDER APPEALS states in pertinent part:

1.21-1 General Principles

Any provider who is aggrieved by a Department action made pursuant to this Manual has sixty (60) calendar days from the date of receipt of that decision, to request an informal review. The request must be in writing.... The informal review will consist solely of a review of documents in the Department's possession including submitted materials/documentation and, if necessary by the Department, it may include a personal meeting with the provider to obtain clarification of the materials.

---

In November, 2014 the Department promulgated additional rules, expressly incorporating the SMHP into the MBM, which purportedly states:

To be eligible for an incentive payment and/or be deemed as having fully implemented HER, a professional or hospital must:...C. Meet all the requirements of this rule and Maine's SMHP and IAPDU.

Requests for informal reviews shall be submitted to MaineCare Services or other designated Department representatives unless otherwise directed by the governing sections of Chapter II or Chapter III of this Manual. A written report of the decision resulting from that review will be issued to the provider.

A. Administrative Hearing

A provider must properly request an informal review and obtain a decision before requesting an administrative hearing. If the provider is dissatisfied with the informal review decision, he or she may write the Commissioner of the Department of Health and Human Services to request a hearing provided he/she does so within sixty (60) days calendar days of the date of receipt of the informal review report on the Department's action...

...The hearing shall be held in conformity with the Maine Administrative Procedures Act, 5 M.R.S.A. § 8001 *et seq.* and the Administrative Hearings Regulations.

The presiding officer shall issue a written decision and findings of fact to the provider or, ....issue a written recommendation to the Commissioner of Health and Human Services. The Commissioner will then make the final decision. ......If the provider is dissatisfied with the final decision, an

appeal may be taken to the Superior Court pursuant to the Administrative Procedure Act.

On March 31, 2016 the Department issued to HRH a Recoupment Notice letter notifying HRH of the Department's intent to recoup $344,644 based on the audit performed by CMS. See Exhibit J-13. In its Recoupment Notice the Department indicated the recoupment was pursuant to an audit by CMS. The Department further advised HRH that appeal of the CMS audit is conducted pursuant to CMS rules and regulations, and since HRH had already appealed to CMS, it implied the appeal was final. See Exhibit J-1.

On May 27, 2016, HRH submitted to the Department a Request for Informal Review. See Exhibit J-14. In its request, HRH objected to the assertion the CMS audit was final and indicated it was entitled to informal review and other appeal rights pursuant to the MaineCare Benefits Manual as well as statutory and contractual rights. See Exhibit J-14 (CR 791-793). And HRH raised several issues for review, including that it qualified for exclusion to meaningful use requirements in several subject areas. (CR 794).

On January 22, 2018 the Department issued to HRH a Final Informal Review Decision. Exhibit J-1 (CR 353-356). In its decision the Department indicated the Department was permitted to rely on the CMS audit, and that HRH was not entitled to an independent review. (CR 354-355). Regarding whether HRH was excluded from meaningful use requirements in several subject

---

[1] The Department argues that since Section 1.21-1 provides Provider Appeal rights to providers aggrieved by "Department" action, HRH has no appeal rights because the action it was aggrieved by was taken by CMS. That argument is unavailing, as clearly it was the Department who issued to HRH the Recoupment Notice and was attempting to collect those funds.

11

areas, the Department denied review on the basis CMS had already addressed the exclusion requests through its audit and appeal process. (CR 355).

On March 21, 2018, HRH requested an administrative hearing pursuant to the MaineCare Benefits Manual. See Exhibit J-15 (CR 805-828). On April 14, 2018, the Department's Chief Administrative Hearing Officer raised the issue that the Department maintained that HRH did not have the right to appeal the findings made by the CMS audit, but invited the parties to submit arguments to the issue. See Exhibit J-16 (CR 829).⸱ HRH and the Department submitted arguments outlining their opposing positions. See Exhibits J-17, J-18 and J-19. Ultimately, the Department's Chief Administrative Hearing Officer granted HRH's request for a hearing, but limited it to the two issues identified in the Department's Final Informal Review Decision, namely whether the Department was permitted to rely on the CMS audit and whether HRH was entitled to an independent review. See Letter of James D. Bivins, Chief Administrative Hearing Officer, HO-4, Vol. 1 (CR 77). HRH was not permitted to argue on appeal whether it qualified for exclusion to meaningful use requirements.

Boiled down to its simplest form, it is the Department's position, which was accepted by the Hearing Officer in issuing the Administrative Hearing Recommended Decision, that the State Medicaid Health Information Technology Plan (SMHP) trumps the MaineCare HIT Program Rules and MaineCare Benefits Manual. The Hearing Officer viewed the SMHP as "signed agreement" between the Department and CMS *that CMS's audit and appeal process for dual-eligible hospitals would be binding upon it with respect to MaineCare HER/HIT Program*

---

⸱ The court notes that when the Department issued the Final Informal Review Decision on January 22, 2018, it advised HRH of its right to request an administrative hearing. See Exhibit J-1 (CR 356).

*incentive payments made.* See Exhibit A, p.13 (CR 885)(emphasis added). The Hearing Officer made this finding after acknowledging the HIT Plan (SMHP) had not been formally promulgated and was not enforceable by or against the Department by any party other than CMS. (CR 884).

As previously discussed, the SMHP states that *Dually-eligible hospitals cannot appeal MU (meaningful use), which must be done through CMS.* (CR 657) and *Dually-eligible hospital appeals of Meaningful Use are under the purview of CMS, not states.* (CR 468; see also CR 498). So, the court does not disagree with the Hearing Officers finding that an agreement existed between the Department and CMS. But that does not mean HRH is stripped of its appeal rights when it is not a direct party to the SMHP, and the SMHP has not been subject to rule promulgation pursuant to the APA for the 2013 year in dispute.

As part of the EHR Program, the Department promulgated administrative rules, the HIT Program Rules, which were incorporated into the MaineCare Benefits Manual. See Exhibit J-6. As previously discussed, those rules specifically provided an appeal process, including appeals of recoupments by either the Department *or* CMS, and of audits by either. See Section 2.05-2, Exhibit J-6 (CR 747-748). Although "meaningful use" is a defined term in the HIT Program Rules, nothing in the rules indicate audits of meaningful use and appeals thereof are delegated to CMS. On the other hand, the HIT Program Rules, when setting forth the Hearings and Appeals process, do specifically reference the MBM and states *Appeal rights and processes are governed by the MaineCare Benefits Manual, Chapter I, Section 1, §1.21-1.* As discussed, that section of the MBM sets forth the right to informal reviews, administrative hearings, and appeals to the

---

* It is not entirely clear whether *it* refers to the Department or dual-eligible hospitals; the court concurs the Department would be bound by the SMHP.

Superior Court. Without the SHMP being subject to the rule promulgation process pursuant to the APA, and HRH not being a party to the SMHP, the court finds that the administrative hearing process failed and denied HRH's rights to a full and complete review of its appeal at both the informal review and administrative hearing. At both the informal review and administrative hearing, despite its requests, HRH was denied review of its challenges that it was exempt from "meaningful use" requirements in several subject areas.[7] At both review levels the Department prevailed that it could rely solely on the CMS audit, and that it was not entitled to review. This review is contrary to the review afforded by the HIT Program Rules and MaineCare Benefits Manual, and likewise lacks conformity with the Administrative Procedures Act.

The Department suggests *providers were informed of the SMHP through rule as the governing plan for the Department's health technology plan.* See Respondent's Brief, p. 3. The court disagrees with that as a blanket assertion. All that is stated in the HIT Program Rules is *States are required to submit a State Medicaid Health Plan (SMHP) and receive Center for Medicare and Medicaid Services (CMS) approval of the SMHP prior to implementing the incentive payment program.* See Exhibit J-6, Section 2.01 Introduction and Statutory Authority (CR 740). The rules do not inform providers that appeal rights provided in the HIT Program Rules and MaineCare Benefits Manual are superseded or altered by the SMHP. As previously stated in Footnote 3, not until November, 2014 was the SMHP promulgated as a rule, and then made rule that to be eligible for payments, a provider must " C. Meet all requirements of this Rule and Maine's SMHP.."

---

[7] Although not necessarily relevant to the grounds of the decision herein, at oral arguments made August 28, 2019, it was made more clear that HRH believed it was exempt from meaningful use requirements for transmission of syndromic surveillance, immunizations, or lab data.

14

In the Administrative Hearing Recommended Decision, the Hearing Officer also indicated an ambiguity was created in the HIT Program Rules by use of the term "or" when referring to recoupments as determined by the Department *or* CMS, and because the rules did not indicate whether the Department was retaining or delegating meaningful use audit and appeals. Recommended Decision, Exhibit A, p. 13 (CR 885). Finding an ambiguity, the Hearing Officer proceeded to attempt to reconcile it by considering other sources. Id. The Department argues that Maine case law on statutory construction allows looking at both the SHMP, which has not been promulgated as rule, and the HIT Program Rules and MaineCare Benefits Manual, which have been promulgated, to discern the Department's intent.

First, the only documents having the effect of law as to the 2013 year are the HIT Program Rules and MaineCare Benefits Manual. As the Hearing Officer noted, the SMHP, which for the 2013 year was not yet promulgated, is only binding between the Department and CMS. It is only when the HIT Program Rules and SMHP are read together that an ambiguity exists, as only the SMHP sets forth a distinct CMS audit and appeal process for dual-eligible hospitals. This is an ambiguity created only when looking at the SMHP and HIT Program rules together.

When reviewing a statute, the court first looks to the statutory language to discern the Legislature's intent. *State v. Legassie,* 2017 ME 202, ¶ 13. The court looks to the plain meaning of the statute, interpreting its language to avoid absurd, illogical or inconsistent results. *Carrier v. Sec'y of State,* 2012 ME 142, ¶12. A statute is ambiguous if it is reasonably susceptible to

different interpretations. *Id.* When a statute is unambiguous, the statute is interpreted directly, without applying statutory construction. *Id.*

In this case, when looking solely at the only legally promulgated rules, the HIT Program Rules and the MaineCare Benefits Manual, there is no ambiguity whatsoever. Those rules clearly afford aggrieved providers hearing and appeal rights for audit findings and recoupment efforts by either the Department *or* CMS. The court does not share the Hearing Officers view that use of the term *or* creates an ambiguity. An ambiguity or question arises only when the SMHP is read in conjunction with the HIT Program Rules, but again, the SMHP is not a rule binding upon HRH for the 2013 year. The HIT Program rules and MaineCare Benefits Manual entitle aggrieved providers to appeal rights and a hearing for audits and recoupment actions by either the Department or CMS.

Finally, the court does not accept that HRH is collaterally estopped from presenting its appeal. In all prior reviews, the audit findings of CMS were accepted, without any meaningful review of HRH's argument that it was exempt from meaningful use requirements.[8] As referenced by the Department in its brief, application of collateral estoppel requires an adjudication that had the elements of (1) adequate notice, (2) the right to present evidence and legal argument, (3) a formulation of issues of law or fact, (4) the rendition of a final decision, and (5) any other procedural elements as may be necessary to constitute the proceeding a sufficient means of

---

[8] The court appreciates that the position of HRH is it was exempt from meaningful use compliance for submission of syndromic surveillance, immunizations, and lab data, while the position of the Department (or CMS) is that HRH was perhaps exempt from submitting the data but not exempt from acquiring the necessary system requirements. The court takes no position as to the validity or strength of either position, other than noting that the appeals and review process did not fully litigate the issue and differing positions of the litigants.

conclusively determining the matter in question. *North Berwick v. Jones*, 534 A.2d 667, 670 (Me. 1987). Based upon the review of this record, the court does not agree that HRH was afforded an opportunity to present evidence and argument at any of the levels of review afforded by the MBM regarding its exemption from meaningful use. At the Informal Review the Department denied HRH's request that it review the findings made by the CMS audit. (CR 355). Similarly, the Department's Chief Administrative Hearing Officer denied HRH's request to argue on appeal that it qualified for exemption from the meaningful use requirements. (CR 77).

Accordingly, the Petitioner Houlton Regional Hospital's appeal is granted. The Final Decision issued February 7, 2019 accepting *in toto* the Hearing Officer's Administrative Hearing Recommended Decision is vacated and the matter is remanded for the Department to conduct an independent review of CMS's audit, including an administrative hearing, pursuant to the HIT Program Rules and MaineCare Benefits Manual, and that such review include HRH's claims for exemption from "meaningful use" compliance in the subject areas identified.

Pursuant to Rule 79(a) this order shall be incorporated by reference in the Civil Docket.

Dated: September 2, 2019

Harold L. Stewart, II
Justice, Superior Court

17