MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 10
Docket:       Ken-17-119
Argued:       November 16, 2017
Decided:      January 23, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

EUPHREM MANIRAKIZA et al.

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES

JABAR, J.

[¶1]   Euphrem Manirakiza appeals from the judgment entered by the Superior Court (Kennebec County, *Murphy, J.*) upholding the final agency decision of the Department of Health and Human Services denying Manirakiza's application for food supplement benefits.[1]  Because we conclude that the temporal and fiscal limitations contained in P.L. 2013, ch. 368, § OO-14 apply only to the fiscal years ending June 30, 2013, June 30, 2014, and June 30, 2015, and not beyond June 30, 2015, we vacate the Superior Court's judgment.

---

[1]  The Department also denied Fatima Nkembi's application for food supplement benefits for eligible members of her household.  Manirakiza's and Nkembi's cases were consolidated on appeal to the Superior Court and to us, and both cases require us to address the same legal question.  Accordingly, this opinion refers to appellants jointly as "Manirakiza."

## I. BACKGROUND

[¶2]  The following undisputed facts are taken from the hearing officer's recommended decision, *see Brown v. Dep't of Health and Human Servs.*, 2006 ME 63, ¶ 2, 898 A.2d 387, and the procedural facts are drawn from the trial court record.

[¶3]  Manirakiza and his family arrived in the United States in 2014.  In August of 2015, after Manirakiza and his wife received Employment Authorization Documents, Manirakiza applied for food assistance for his household pursuant to 22 M.R.S. § 3104-A(1)(D) (2017) (Paragraph D).  Title 22 M.R.S. § 3104-A limits the categories of legal noncitizens who are eligible to receive food assistance, and Paragraph D establishes that noncitizens who are unemployed but who have "obtained proper work documentation" are eligible to receive the benefit.  *See* 22 M.R.S. § 3104-A(1)(D).  Although certain members of Manirakiza's family were eligible for benefits pursuant to Paragraph D, the Department denied Manirakiza's application.  After an administrative hearing, the hearing officer found that the Department was correct when it denied Manirakiza's application based on language in the public law that is not present within the statutory text, which contained a fiscal limitation—$261,384—as well as a temporal limitation—June 30,

2015—on the availability of funding for benefits for persons otherwise eligible under Paragraph D. *See* P.L. 2013, ch. 368, § OO-14 (Section OO-14). The Commissioner accepted the findings of fact and recommendation of the hearing officer that the Department correctly denied the application for food assistance pursuant to Paragraph D and Section OO-14.

[¶4]  To resolve the statutory interpretation issue, namely how the limitations within Section OO-14 affected the plain language of Paragraph D, Manirakiza appealed to the Superior Court. *See* M.R. Civ. P. 80C; *see also* 5 M.R.S. § 11001 (2017).  That petition and complaint included four counts: Count I alleged that the Department erred when it found that Manirakiza was not entitled to food assistance under Paragraph D; Count II requested that the court certify the action as a class action and, pursuant to 5 M.R.S. § 8058 (2017), requested judicial review of the Department rule interpreting Paragraph D, 17 C.M.R. 10 144 301-14 § FS-111-2 (2013); Count III sought a declaratory judgment; and Count IV sought injunctive relief.  The Department filed oppositions to all counts and a motion to dismiss the independent claims, Counts II and III, as duplicative.

[¶5]  On June 28, 2016, the court denied Manirakiza's motion to certify the class and granted the Department's motion to dismiss the independent

4

claims as duplicative. In order to determine whether Manirakiza was likely to succeed on the merits, the court also requested memoranda of law concerning the interpretation of Paragraph D. After receiving further argument on that issue, in an order dated January 15, 2017, the court denied Manirakiza's motion for a preliminary injunction, determining that Manirakiza had failed to demonstrate he was more likely than not to succeed on the merits. After the denial of the preliminary injunction, the parties agreed that the record was complete, that it was unnecessary to conduct further discovery, and that it was unnecessary to provide additional briefing or argument. On February 28, 2017, upon those agreements by the parties, the court entered final judgment in favor of the Department, upholding the Department's statutory interpretation of Paragraph D and the resulting denial of Manirakiza's application for food assistance. Manirakiza timely appealed to us. *See* 14 M.R.S. § 1851 (2017); M.R. App. P. 2 (Tower 2016).[2]

## II. DISCUSSION

[¶6] On appeal, Manirakiza contends that the court erred by (1) entering final judgment in favor of the Department on the statutory interpretation issue, effectively determining that Paragraph D also contained

---

[2] Because this appeal was filed before September 1, 2017, the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1.

the temporal and fiscal limitations of Section OO-14, and that those limitations were effective beyond the fiscal years ending June 30, 2013, June 30, 2014, and June 30, 2015; (2) denying his motion for class certification; and (3) dismissing the independent claims contained in Counts II and III of his complaint as duplicative.[3]

A.    Statutory Interpretation of 22 M.R.S. § 3104-A(1)(D)

[¶7]    "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record."  *Somerset Cty. v. Dep't of Corr.*, 2016 ME 33, ¶ 14, 133 A.3d 1006 (alteration omitted) (quotation marks omitted).  We review issues of statutory interpretation de novo.  *See Wong v. Hawk*, 2012 ME 125, ¶ 8, 55 A.3d 425.

[¶8]    The goal of statutory interpretation is to give effect to the Legislature's intent.  *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  "Only if the plain language of the statute is ambiguous will we look beyond that language to examine other indicia of legislative intent, such as legislative history."  *Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41,

---

[3]  Although the Complaint contains four counts, Count IV seeks injunctive relief based on the arguments set forth in Count I, and it is therefore not an independent claim.

¶ 14, 157 A.3d 223. "Statutory language is considered ambiguous if it is reasonably susceptible to different interpretations." *Id.* (quotation marks omitted). "When a statute administered by an agency is ambiguous, we review whether the agency's interpretation of the statute is reasonable and uphold its interpretation unless the statute plainly compels a contrary result." *Id.* (quotation marks omitted).

[¶9]   In 2013, the Legislature amended 22 M.R.S. § 3104-A to add Paragraph D, which created a fourth category of food assistance eligibility in addition to the three categories that already existed under the statute. *See* P.L. 2013, ch. 368, § OO-2.   The Legislature enacted this amendment in an appropriations bill entitled "An Act Making Unified Appropriations and Allocations for the Expenditures of State Government, General Fund and Other Funds and Changing Certain Provisions of the Law Necessary to the Proper Operations of State Government for the Fiscal Years Ending June 30, 2013, June 30, 2014 and June 30, 2015." P.L. 2013, ch. 368 (the appropriations bill). With the 2013 amendment, 22 M.R.S. § 3104-A(1) now reads, in relevant part,

> **1**. **Food assistance.** The department shall provide food assistance to households that would be eligible for assistance under the federal Food Stamp Act of 1977 . . . .  A noncitizen legally admitted to the United States . . . is not eligible for food assistance through a state-funded program unless that noncitizen is:
>
> **A.** Elderly or disabled . . . ;

> **B.** A victim of domestic violence;
>
> **C.** Experiencing other hardship, such as time necessary to obtain proper work documentation . . . ; or
>
> **D.** *Unemployed but has obtained proper work documentation, as defined by the department by rule. Rules adopted by the department under this paragraph are routine technical rules as defined by Title 5, chapter 375, subchapter 2-A.*

(emphasis added). Neither party argues that the language of Paragraph D is ambiguous on its face. However, in the same part of this appropriations bill, P.L. 2013, ch. 368, part OO (Part OO), the Legislature also included the following unallocated language,[4]

> **Sec. OO-14**. **Funding limit for legal noncitizens with work documentation but not yet employed.** Funding for noncitizens legally admitted to the United States who are eligible for a hardship exception under the Maine Revised Statutes, Title 22, section 3104-A, subsection 1, paragraph D or Title 22, section 3762, subsection 3, paragraph B, subparagraph (2), division (d) is limited to $261,384 until June 30, 2015. If the funding limit is met prior to June 30, 2015, legal noncitizens with work documentation are *no longer eligible* for the hardship exception under Title 22, section 3104-A, subsection 1, paragraph D or Title 22, section 3762, subsection 3, paragraph B, subparagraph (2), division (d).

P.L. 2013, ch. 368, § OO-14 (emphasis added). It is this italicized language—"no longer eligible"—that gives rise to the ambiguity in this case because it

---

[4] The *Maine Legislative Drafting Manual* provides that "[a]n unallocated provision is law that is published in *Laws of the State of Maine* but is not included in the Maine Revised Statutes." Office of the Revisor of Statutes, *Maine Legislative Drafting Manual*, pt. II, ch. 1, § 1(A) at 15 (1st ed. Oct. 1990, rev. Oct. 2016). In contrast, allocated provisions of law are those that appear in the Maine Revised Statutes. *Id.*

conflicts with Paragraph D, the plain language of which contains no limitation. Because the unallocated language in Section OO-14 makes the statutory text of Paragraph D susceptible to different interpretations, Paragraph D is ambiguous. *Scamman,* 2017 ME 41, ¶ 14, 157 A.3d 223. Specifically, the phrase "no longer eligible" demonstrates a legislative intent to either (a) limit the total amount of the benefits paid pursuant to Paragraph D only during the fiscal years that the bill appropriates funds for; or (b) permanently cut off Paragraph D eligibility once the funding limit of $261,384 has been met or after June 30, 2015, despite the absence of any limiting language within the allocated language of the Paragraph D statutory provision itself. To resolve the ambiguity, we must look to external indicia of legislative intent. *Id.*

[¶10] The *Maine Legislative Drafting Manual* is particularly informative in this case because it expresses what the Legislature generally intends when it allocates language to an existing statutory framework or chooses not to allocate the language to any statute,

> **A. Public Law.** Public law bills propose laws that affect all of the people of the State or all persons or things of a particular class. Since these bills affect the general law, the sections of a public law bill that are of *general or long-lasting application are almost always allocated to the Maine Revised Statutes*; *that is, they are placed somewhere in the existing statutory framework. Temporary provisions of a public law bill or housekeeping provisions are usually not allocated to the statutes but are drafted*

> *as unallocated law and placed at the end of the bill* (e.g., transition provisions, retroactivity clauses, *appropriation* and allocation clauses, effective date clauses and emergency clauses . . . ). An unallocated provision is law that is published in *Laws of the State of Maine* but is not included in the Maine Revised Statutes.

Office of the Revisor of Statutes, *Maine Legislative Drafting Manual*, pt. II, ch. 1, § 1(A) at 15 (1st ed. Oct. 1990, rev. Oct. 2016).

[¶11]   Section OO-14 was not placed "somewhere in the existing statutory framework."  Indeed, it was placed at the end of Part OO, and it was not included in the Maine Revised Statutes.  Moreover, there are fourteen sections within Part OO of the appropriations bill, and every section other than Section OO-14 amends an existing statutory provision.  *See* P.L. 2013, ch. 368, §§ OO-1 to OO-13.  Section OO-14, at the very end of Part OO, is the only section that does not amend an existing statutory provision.  Language that the Legislature intends to be "of general or long-lasting application [is] almost always . . . placed somewhere in the existing statutory framework," and "temporary . . . or housekeeping provisions . . . are drafted as unallocated law and placed at the end of the bill."  According to the drafting manual's general statement of intent regarding allocated versus unallocated language, Section OO-14 fits squarely within the parameters of a "temporary," "housekeeping," or "appropriation" provision placed at the end of a bill.

Conversely, the fact that the Legislature allocated the language of Paragraph D to an "existing statutory framework" indicates the Legislature's intent for that language to be of "general" or "long-lasting application." It is also structurally relevant that Part OO of the appropriations bill both enacted Paragraph D and included the language found in Section OO-14; if the Legislature had intended for Section OO-14 to permanently limit Paragraph D, it could have done so by means of a limiting provision within the statutory language itself.

[¶12] The Department argues that although the "language of § OO-14 could have appeared in the codified portion, its absence does not render it a nullity. . . . Whatever the wisdom of this choice, it remains true that the unallocated language must be given equal consideration as the allocated." The Department is correct that the language in Section OO-14 is not a nullity. *See Bowler v. State*, 2014 ME 157, ¶ 12, 108 A.3d 1257 ("[A]n unallocated provision of law is a law nonetheless . . . ."). The Legislature's decision not to allocate the language to an existing statutory framework, however, indicates an intentional distinction between the nature of the two provisions. The Department's contention that the provisions should "be given equal consideration" does not comport with the meaningful distinction between allocated and unallocated law.

[¶13]  Further, in the summary portion of the Committee Amendment, the Legislature explained that Part OO of the appropriations bill "amends the food supplement and Temporary Assistance for Needy Families programs for legal aliens to limit eligibility to those noncitizens who are unemployed but who have obtained proper work documentation."  Comm. Amend. A to H.P. 1079, L.D. 1509, No. H-468 (126th Legis. 2013).  Although this is "language of limitations," its limitation applies only to the category of noncitizen who is eligible for the benefit; there is no indication that the Legislature also intended for those eligible to be eligible only for a limited time or only until the predetermined funding limit was met.  The opposite appears to be true: the broad nature of the summary indicates an intent for Paragraph D to be permanent.

[¶14]  We also endeavor to construe statutes to avoid an illogical or absurd result.  *Wong*, 2012 ME 125, ¶ 8, 55 A.3d 425.  If not absurd, the result of interpreting Section OO-14 to create a permanent limitation on Paragraph D is at least illogical.  It would be illogical to expect that a seemingly straightforward statutory provision could be limited, in perpetuity, by a portion of unallocated law in an appropriations bill affecting only specific years.  Those who look to the Maine Revised Statutes—which are readily

accessible and set forth as the law of our State—should not be required to look to the appropriations bills for each legislative session in which a statute was adopted or amended in order to determine whether a statutory provision, that is unambiguous on its face, may somehow contain a limitation buried in one of those appropriations bills, which only appropriate funds for limited time periods.

[¶15] We conclude that the Legislature intended for Paragraph D to be a permanent exception to the general ineligibility of noncitizens for food assistance under 22 M.R.S. § 3104-A(1), that the language of limitation contained in Section OO-14 was language of limitation only for the fiscal years ending June 30, 2013, June 30, 2014, and June 30, 2015, and that once that budget period ended on June 30, 2015, absent other legislative action, the Department was required to provide food assistance to applicants eligible under Paragraph D in the same way that it must provide food assistance to those persons eligible under paragraphs (A), (B), and (C) of the same statutory provision. *See* 22 M.R.S. § 3104-A(1)(A)-(C).

B. Class Certification and Dismissal of Independent Claims

[¶16] Manirakiza argues that the court applied the incorrect legal standard when it denied his motion for class certification, and that it was

improper for the court to dismiss the independent claims, Counts II and III, as duplicative. Finding no error in these decisions, we affirm the actions of the court.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

Melissa A. Hewey, Esq., David M. Kallin, Esq. and Amy K. Olfene, Esq. (orally), Drummond Woodsum, Portland, and Robyn Merrill, Esq., Maine Equal Justice Partners, Augusta, for appellants Euphrem Manirakiza and Fatima Nkembi

Janet T. Mills, Attorney General, and Thomas J. Quinn, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Kennebec County Superior Court docket number AP-16-07
FOR CLERK REFERENCE ONLY