STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, SS.                                     CIVIL ACTION
                                                  DOCKET NO. AP-20-48


SUSAN M. HAWES,
        Petitioner

v.                                                **DECISION AND ORDER**
                                                  (M.R.Civ. P. 80C)

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM, BOARD
OF TRUSTEES
        Respondent


## INTRODUCTION

Before the court is the Petition for Review of Final Agency Action filed by Susan M. Hawes, seeking to reverse the decision of the Board of Trustees of the Maine Public Employees Retirement System (MPERS or the System) that adopted the Recommended Final Decision of the Administrative Hearing Officer. The appeal purports to be brought pursuant to 5 M.R.S. §§ 11001-11002 (Maine Administrative Procedure Act) and M.R.Civ.P. 80C.

For the reasons discussed below, the court concludes that Ms. Hawes lacks standing to bring this petition on her own beahlf and, therefore, it must be dismissed. Alternatively, if Ms. Hawes does have standing, the court concludes that the petition should be denied.

## BACKGROUND

This case involves a dispute over the calculation of the disability retirement benefit for Philip Hawes, a former deputy sheriff and Susan's husband. At all relevant times during the proceedings before MPERS, Susan was designated as her

husband's representative. In addition, the court understands that Susan had a Durable Power of Attorney authorizing her to act on behalf of her husband, although a copy of that document has not been made part of the administrative record.

The following factual summary is taken from the Recommended Final Decision of the hearing officer (F. Mark Terison, Esq.) dated August 12, 2020, which was later adopted by the Board of Trustees on October 15, 2020. (R. at 28.2 & 28.16).

In September 2018, MPERS granted disability retirement benefits to Philip. Because he was also receiving SSDI benefits for the same disability, however, MPERS was required to reduce or offset Philip's disability retirement benefit in accordance with 5 M.R.S. § 18530(4)(B)(1), which provides:

> The initial disability retirement benefit must be reduced if necessary so that the benefit plus any benefits under paragraph A [under workers' compensation laws or the federal Social Security Act] do not exceed 80% of the person's average annual earnings. For the purposes of this subparagraph, "average annual earnings" means the total of the person's average final compensation plus other wages and earnings from employment for the calendar year in which the person had the highest total of other wages and earnings from employment during the 5 years immediately preceding the year in which the person became disabled. (Emphasis supplied).

Susan and Philip showed the sum of $7,726 as real estate rental income on their joint federal tax return for 2015. MPERS counted ½ of that amount (or $3,863) as Philip's likely highest "earnings from employment" outside of his salary as a deputy sheriff. (R. at 28.17). The effect of this was to increase Philip's average annual earnings such that he would receive a monthly disability retirement benefit, after the required offset, of $1,740.50. (R. at 28.18). When Susan learned of this in November 2018, she insisted that the calculation was "incorrect," and that the real

2

estate rental income was "not joint," but was "100% the result of [her] effort and [her] responsibility for the past fourteen years." Susan and Philip submitted a sworn statement affirming that Philip had virtually nothing to do with the rental income or properties and that it was identified as income on the couple's joint tax return, but "[t]he rental income is not joint." (R. at 3.8).

MPERS explained to Susan that increasing Philip's average annual earnings was advantageous to Philp because it increased his monthly benefit amount. (R. at 28.19). Nevertheless, at Susan's insistence and based on her sworn statement, MPERS recalculated Philip's benefit amount by excluding the rental income from "other wages and earnings from employment." This had the effect of reducing Philip's monthly benefit amount to $1,482.97. (R. at 16.72).

Six months later, in May 2019, Susan contacted MPERS and sought to have Philip's benefit amount recalculated to include his half of the rental income as reflected in the 2015 joint tax return. Susan maintained that Philip had a "legal right" to have his 50% of the rental income included in his benefit calculation because he was a co-owner of the properties and the bank account used for property management, and because his name was on the deeds and mortgages.

Susan's request was denied by the MPERS Disability Retirement Business Unit Leader, who pointed out that the income had to be from "wages or earnings from employment," and that Susan's prior statements, including the one under oath, showed that Philip had not "actively earn[ed] the rental income by proving property management services." (R. at 28.20). The issue was reviewed by the Executive Director Designee (EDD), who upheld the decision to exclude the rental income from Philip's "average annual earnings" computation because it was not considered to be "wages and earnings from employment."

3

Philip, with Susan as his designated representative, appealed and the matter was assigned to an independent administrative hearing officer, who scheduled an evidentiary hearing for December 12, 2019. At this point, legal counsel for Philip entered an appearance on his behalf. Up to this point, however, Susan herself had been dealing with the staff of MPERS on this issue.[1]

Susan testified at the evidentiary hearing. She testified that she was concerned in November 2018 that Philip's initial benefit amount as calculated by MPERS was too "high" and would result in him being responsible for an overpayment in the future. She also testified that she was confused when she insisted that Philip's ½ of the rental income should be excluded from his benefits calculation. Specifically, she testified that she confused what was happening with Philip in 2018 with what he was doing in 2015. Some exhibits were introduced into evidence in support of the argument that Philip had done some property maintenance work at the rental properties, including replacing a handrail and doorknob, painting, waterproofing the basement of one of the buildings, cleaning up between tenancies and mowing the lawn. At the close of the evidence, the matter was sent back to the EDD for reconsideration. On March 2, 2020, the EDD affirmed the System's calculation of benefits for Philip.

The matter was then returned to the hearing officer, who received written arguments from the parties. After also receiving comments from the parties on his Recommended Decision (R. at 23.2), the hearing officer issued his Recommended Final Decision on August 12, 2020. That Decision was adopted by the Board of Trustees on October 15, 2020. (R. at 25.2 & 28.2).

---

[1] There is reference in the administrative record that Philip had legal counsel regarding some other issue involving MPERS, but that is all the court knows about that.

On December 14, 2020, Susan, acting *pro se*, filed the instant Petition for Review of Final Agency Action, alleging that '[s]he is the power of attorney, representative payee, and caregiver for her husband, Philip Hawes, a 50-year-old former Corrections Officer receiving Maine Public Employees Retirement System (MPERS) disability benefit," and that she had exhausted "her" administrative remedies. *Petition at ¶¶ 1 & 3.*

## STANDING

The Maine Administrative Procedure Act authorizes an appeal to the Superior Court from a final agency action by "any person who is aggrieved by the final agency action." 5 M.R.S. § 11001(1). In order to be an "aggrieved" person, one must have suffered a "particularized injury," meaning that the agency action "operated prejudicially and directly upon the party's property, pecuniary or personal rights." *Nelson v. Bayroot, LLC.*, 2008 ME 81. ¶ 10, 953 A.2d 328.

The court agrees with MPERS that Ms. Hawes is not an aggrieved person within the meaning of the Maine Administrative Procedure Act. Only Philip's rights were adjudicated by the MPERS Board of Trustees. Susan has not sought to bring this petition on behalf of Philip pursuant to her authority under the power of attorney. Rather, she has filed the petition in her own name and on her own behalf and seeks to appeal from the Board's Decision and Order "denying the Petitioner [Susan Hawes] the disability retirement benefit defined in 5 M.R.S. § 18530(4)(B)(1)." *Petition at ¶ 3.* The court concludes that Susan Hawes lacks standing to bring this petition on her own behalf and, therefore, it should be dismissed.

In the event the court is mistaken on the issue of standing, it will address the merits of the petition.

## STANDARD OF REVIEW

When an administrative agency's decision is appealed pursuant to M.R.Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Servs.*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. The court will "not attempt to second-guess the agency on matters falling within its realm of expertise," meaning judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported," *Seider*, 2000 ME 206, ¶ 9, and the party seeking to overturn the agency's decision bears the burden of proof, and that party must prove that there is no competent evidence in the record to support the Board's decision. *Bischoff v. Bd. of Trs.*, 661 A.2d 167, 170 (Me. 1995).

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v Board of Environmental Protection*, 2001 ME. 18 ¶13, 989 A. 2d 1128. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v Maine Employment Security Commission*, 431 A. 2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the agency

did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Board of Examiners of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 *quoting CWCO, Inc. v. Superintendent of Insurance,* 1997 ME 226, ¶ 6, 703 A. 2d 1258, 1261.

When this court reviews an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, the first inquiry is whether the statute is ambiguous or unambiguous. *Competitive Energy Servs., LLC v. Pub. Utils. Comm'n,* 2003 ME 12, ¶ 15, 818 A.2d 1039. If the statue is unambiguous, it is interpreted according to its plain language. *Arsenault v. Sec'y of State,* 2006 ME 111, ¶ 11, 905 A.2d 285. If, on the other hand, the statute is ambiguous, deference is given to the agency's interpretation if the interpretation is reasonable. *Id.; see also SAD 3 Educ. Ass'n v. RSU 3 Bd. of Dirs.,* 2018 ME 29, ¶ 14, 180 A.3d 125 ("When a dispute involves a board or agency's interpretation of a statute it administers, 'the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld unless the statute plainly compels a contrary result.'") (citations omitted). Ultimately, the goal of statutory interpretation is to give effect to the Legislature's intent, *Manirakiza v. Dep't of Health & Hum. Servs.,* 2018 ME 10, ¶ 8, 177 A.3d 1264, but only if "the plain language of the statue is ambiguous will we look beyond that language to examine other indicia of legislative intent, such as legislative history," *Id.* (quoting *Scamman v. Shaw's Supermarkets, Inc.,* 2017 ME 41, ¶ 14, 157 A.3d 223); *see also L'Heureux v. Michaud,* 2007 ME 149, ¶ 7, 938 A.2d 801 ("Statutory language is ambiguous if it is reasonably susceptible to multiple interpretations.").

7

## DISCUSSION

The hearing officer's Recommended Final decision was detailed, comprehensive and well-reasoned. He expressly found that Susan's testimony on significant points was "unbelievable." (R. at 28.25). There was clearly competent evidence in the record for the hearing officer to find that the rental income was not "wages and earnings from employment" that Philip had engaged in. Moreover, the court cannot find that MPERS committed an error of law in its interpretation that the phrase "wages and earnings from employment" must involve some element of "active participation" in some form of employment-like activities and cannot simply involve the receipt of passive income. *See Courtois v. MPERS*, CUMSC-AP-2011-26 (June 27, 2012) (Warren, J.).

## CONCLUSION

The entry is:

The Petition for Review of Final Agency Action is DISMISSED for lack of standing. Alternatively, the Petition is DENIED and the Decision of the Maine Public Employees Retirement System, Board of Trustees is AFFIRMED.

The Clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: October 7, 2021

William R. Stokes
Justice, Superior Court

8